IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

LINDA R. JAMES                                                              PLAINTIFF

v.                      Civil No. 08-3054

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                              DEFENDANT

**MEMORANDUM OPINION**

**I.     Factual and Procedural Background**

Plaintiff, Linda R. James, appeals from the decision of the Commissioner of the Social Security Administration (Commissioner) denying her application for disability insurance benefits (DIB), pursuant to §§ 216(i) and 223(d) of Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423(d) ("the Act").

Plaintiff alleges a disability onset date of April 1, 1996, due to chronic back and neck pain, depression, carpal tunnel syndrome, peripheral neuropathy of the upper extremities, and residual pain post left humerus fracture and surgical repair. (Tr. 93-94). On the alleged onset date, Plaintiff was forty six years of age and possessed a G.E.D. (Tr. 45). She performed past relevant work as a carton folding machine operator.[1] (Tr. 476). Her date last insured was March 31, 1999. (Tr. 50). Therefore, in order to receive benefits, Plaintiff must establish disability between April 1, 1996 and March 31, 1999.

Plaintiff filed her DIB application on November 29, 2005. (Tr. 26-29). Her application was

---

[1] A carton folding machine operator is listed in the DOT at 641.685-022 and is classified as medium, unskilled work. (Tr. 476).

denied at the initial and reconsideration levels. (Tr. 33-34, 37-39). At Plaintiff's request, an administrative hearing was held on September 27, 2007. (Tr. 446-82). The Administrative Law Judge (ALJ) rendered an unfavorable decision on March 25, 2008, finding that Plaintiff was not disabled within the meaning of the Act because she was capable of performing her past relevant work as a carton folding machine operator. (Tr. 9-17). Subsequently, the Appeals Council denied Plaintiff's Request for Review on August 6, 2008, thus making the ALJ's decision the final decision of the Commissioner. (Tr. 3-5). Plaintiff now seeks judicial review of that decision.

## II. Medical History

### A. Medical Records Before Date Last Insured

Due to the time lapse between the alleged onset date and the actual filing of her DIB application, Plaintiff's medical records from the relevant time period are scarce.

On August 13, 1991, Plaintiff underwent surgery at Fountain Valley Regional Hospital to correct a deformity in both her feet. (Tr. 152-62). Plaintiff "is an assembly line operator. She is on her feet, on concrete, and wears steel toed shoes daily. . . [her] pain appears to be in and out of shoes at this time and chronic . . . the pain, itself, has been quite sore and sharp, including an aching and burning sensation bilaterally." (Tr. 152). The surgery entailed an Austin Bunionectomy on both feet, reduction of the metatarsal cuneiform joint on both feet, correction of a hammertoe deformity on the fourth and fifth digits of both feet, insertion of K wire at the first metatarsal on both feet, insertion of K wire on the fourth and fifth digits of the right foot, and insertion of K wire with fixation on the fourth and fifth digits of the left foot. (Tr. 147-51). Following surgery, Plaintiff was given "orthotic appliances" to help maintain the bony segments of her feet in proper alignment. (Tr. 160).

In a letter dated October 26, 2007, Tim J. Franks, D.C., acknowledged treating Plaintiff in

physical therapy in 1993-1994, following post-surgical carpal tunnel syndrome, bilateral cubital tunnel syndrome and cervical spine intervertebral disc syndrome at C5, C6, C7, and C8. (Tr. 445). Although Plaintiff experienced "some improvement in physical therapy she still complained of constant dull ache, weakness and radiating pain from the cervical spine to both elbows and hands." (Tr. 445). Mr. Franks noted that Plaintiff had limited range of motion in all planes of the cervical spine and moderate to severe palpable tenderness over the cervical spine musculature bilaterally. (Tr. 445). Following physical therapy, Mr. Franks' prognosis was "poor or guarded due to the fact that the primary problem was the cervical spine disc syndrome which caused most if not all of her pain and discomfort." (Tr. 445). Medical records from Plaintiff's surgery and subsequent physical therapy were not provided as part of the record.

On September 2, 1994, at the request of Dr. Edward Boseker, Plaintiff had an MRI of her lumbar spine performed. (Tr. 181). Results indicated: (1) degenerative disc disease at L1-2, with disc space narrowing plus posterior bulge of the disc (3mm); (2) degenerative disc disease at L4-5, plus localized herniation of the disc posterolaterally to the left (5-6 mm), resulting in encroachment upon the mouth of the left neuroforamen as well as the contiguous epidural fat planes along the left anterolateral aspect of the thecal sac with apparent encroachment upon the left L5 nerve root; and (3) degenerative disc disease at L5-S1, with disc space narrowing plus posterior bulge of the disc (1.5mm), resulting in encroachment upon the epidural fat planes along the anterior and anterolateral aspect of the thecal sac. (Tr. 181-82). The transcript is missing the medical records from Dr. Boseker.

Plaintiff was treated at Western Medical Center in Santa Ana between January 27, 1997 and February 4, 1997 for injuries sustained when she was attacked by her pit bull. (Tr. 401-02). As a

result of the attack, Plaintiff suffered numerous puncture wounds and lacerations to her upper extremities. (Tr. 427). X-rays of Plaintiff's forearm and right humerus revealed soft tissue disruption, but no sign of foreign material or bony fracture. (Tr. 397-99). Surgery was performed to effectively close and repair Plaintiff's wounds. (Tr. 435, 442-43). Upon discharge, Plaintiff's right and left arms were healing without complication. (Tr. 414).

B. Medical Records Following Date Last Insured

On June 22, 2005, Plaintiff had been drinking and rode her bike into a parked truck, resulting in a spiral fracture of her left humerus. (Tr. 178, 216). After being treated in the emergency room, Plaintiff was remitted to the care of Dr. Thomas E. Knox. In a letter dated December 15, 2005, Dr. Knox stated:

> Linda James is under my care for a left humerus fracture sustained on June 22, 2005. Unfortunately, this fracture is not healing; she has a definite delayed union. Approximately one month ago, she was started with a bone stimulator device to stimulate healing of this fracture. She wears this for ten hours a day. I last examined Ms. James on December 8, 2005. X-rays showed perhaps some faint healing of the fracture.
>
> In my opinion, Ms. James is totally disabled and unable to work. I would estimate this disability to continue for up to one year.

(Tr. 178). Due to inadequate healing, Plaintiff, on June 13, 2006, underwent open reduction, internal fixation of her left humerus with plating. (Tr. 249, 308).

In early 2006, Plaintiff began treatment for depression at Ozark Counseling Services. Dr. Steve Austin noted that Plaintiff "has been depressed all her life . . . her stepfather sexually abused her from the ages of 5 to 16. Her grandmother was physically abusive." (Tr. 232). She has been married four times and all these relationships were abusive. (Tr. 233).

According to Dr. Austin's notes, Plaintiff dropped out of high school after completing tenth

grade, but later obtained her G.E.D. (Tr. 233). At age twenty two, Plaintiff became a "heavy alcohol user." (Tr. 232). She was once addicted to methadone and heroin, but reportedly stopped using them several years prior. (Tr. 232). Plaintiff received alcohol and drug treatment in Tustin, California in 1980, and at OMART[2] in August of 2000. (Tr. 232). Plaintiff has been to jail more than ten times, two of which were for prostitution. (Tr. 233).

Upon evaluating Plaintiff, Dr. Austin diagnosed her with Dysthymic Disorder[3], alcohol dependence in early full remission, Post-traumatic Stress Disorder (PTSD), physical and sexual abuse of a child, victim, and Dependent Personality Disorder. (Tr. 233-34). On February 6, 2006 and May 12, 2006, Dr. Austin gave Plaintiff a Global Assessment of Functioning (GAF) score of 50, indicating serious symptoms or any serious impairment in social, occupational, or school functioning.[4] (Tr. 230, 243). Additionally, on a Mental Residual Functional Capacity (RFC) Questionnaire, dated April 21, 2006, Dr. Austin found that Plaintiff, in an unskilled work environment, was unable to meet competitive standards because she could not complete a normal workday and workweek without interruptions from psychologically based symptoms and could not handle normal work stress. (Tr. 224). Dr. Austin also found that Plaintiff was seriously limited, but not precluded, in her ability to: maintain attention for two hour segments; maintain regular

---

[2] OMART is a substance abuse treatment facility located in Gassville, Arkansas.

[3] Dysthymic Disorder is characterized by "a chronically depressed mood that occurs for most of the day more days than not for at least 2 years (Criterion A)." Individuals with Dysthymic Disorder have depressed mood, plus at least two of the following additional symptoms: poor appetite or overeating, insomnia or hypersomnia, low energy or fatigue, low self-esteem, poor concentration or difficulty making decisions, and feeling of hopelessness (Criterion B). AM. PSYCHIATRIC ASS'N. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 376-77 (4th ed., 2000).

[4] *Id.* at 34. On January 9, 2006, at the beginning of treatment, it appears that Dr. Austin gave Plaintiff a GAF score of 35. A GAF score of 31-40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. *Id.*

attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; and get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. (Tr. 224). Dr. Austin anticipated that, due to her impairments, Plaintiff would be absent from work about four days per month. (Tr. 225).

Dr. Donald Crow (a DDS consultant), in a Physical RFC dated June 1, 2006, gave a primary diagnosis of spiral fracture, left humerus, with delayed union. (Tr. 183). He found that as of Plaintiff's date last insured, she could occasionally lift/carry 50 pounds, frequently lift/carry 25 pounds, stand/walk, or sit, for about six hours in an eight-hour workday, and push/pull an unlimited amount (other than as shown for lift/carry). (Tr. 184). Additionally, Dr. Crow found no postural, manipulative, visual, communicative, or environmental limitations. (Tr. 185-87). Dr. Crow concluded that as of Plaintiff's date last insured, she had no severe impairments and could perform work at a medium level. (Tr. 190).

On November 24, 2006, another DDS consultant, Dr. Krishnamurthi, found that in an eight-hour workday, Plaintiff can sit for a total of six hours, stand for a total of one hour, and walk for a total of one hour. (Tr. 277). Dr. Krishnamurthi also found that Plaintiff: (1) could frequently lift/carry up to 5 pounds and occasionally lift/carry from 6-10 pounds, but she was limited to carrying/lifting a maximum of 5 pounds with her left arm; (2) was not limited in the use of her feet; (3) was limited in her ability to grasp/finger with her left hand, but not her right; (4) could occasionally bend, squat, crawl, climb, and reach; and (5) had no environmental limitations. (Tr.

278).[5]

Between December 2006 and April 2007, Plaintiff was treated by Dr. Caleb Gaston. She complained of chronic back pain, anxiety, and peripheral neuropathy of her arms, for which she was prescribed Lorcet, Lexapro, Clonazepam, and Neurontin. (Tr. 284, 288-89). After Plaintiff fell in a hotel bathtub, Dr. Gaston ordered an MRI of Plaintiff's cervical spine and left shoulder. The MRI of Plaintiff's cervical spine showed degenerative spurring at C5-C6, which may impress upon the cord with some laterality to the left. (Tr. 299). Degenerative spurring was also noted at C6-C7, but there was no definite compromise of the exits. (Tr. 299). An MRI of Plaintiff's left shoulder revealed a mildly distracted rotator cuff tear and inflammation around the long head of the biceps. (Tr. 299).

### III. Applicable Law:

The court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions

---

[5] The court finds that Dr. Krishnamurthi's opinion is of little significance to the issue of Plaintiff's ability to work during the relevant time period, as there is no indication that his evaluation pertains to the period between Plaintiff's alleged onset date, April 1, 1996, and her date last insured, March 31, 1999. To the contrary, it appears that Dr. Krishnamurthi's opinion reflects Plaintiff's impairments as of November 2006.

represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). An applicant must also establish that she was disabled before the expiration of her insured status. *See* 42 U.S.C. §§ 416(i), 423(c); *Stephens v. Shalala,* 46 F.3d 37, 39 (8th Cir.1995) (per curiam) (citing *Battles v. Sullivan,* 902 F.2d 657, 659 (8th Cir.1990)).

The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits her physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity (RFC) to perform her past relevant work; and (5) if the claimant cannot perform her past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is declared not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

**IV. Discussion:**

The ALJ found that: (1) Plaintiff last met the insured status requirements of the Act on March 31, 1999; (2) Plaintiff did not engage in substantial gainful activity (SGA) during the period from her alleged onset date of April 1, 1996 through her date last insured of March 31, 1999; (3) Through the date last insured, Plaintiff suffered from a spiral fracture of the left humerus with delayed union[6], which was a severe impairment imposing more than slight limitations on Plaintiff's ability to engage in work-related activities; (4) Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (5) Plaintiff had the residual functional capacity to perform the full range of medium work as defined in 20 C.F.R § 404.1567(c); (6) Plaintiff could perform her past relevant work as a carton folding machine operator; and (7) Plaintiff was not under a disability at any time from April 1, 1996 through March 31, 1999. (Tr. 14-17).

Plaintiff asserts that the ALJ's opinion is not supported by substantial evidence. Specifically, Plaintiff contends that the ALJ erred by: (1) failing to fully and fairly develop the record; (2) discounting Plaintiff's subjective complaints; (3) improperly determining Plaintiff's RFC; (4) improperly discounting the opinion of Dr. Steve Austin, Plaintiff's psychiatrist; and (5) disregarding the weight of the objective medical evidence. *See* Pl.'s Br. at 9-21.

A. Development of the Record

The ALJ has a duty to fully and fairly develop the record, even if a claimant is represented by counsel. *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). "It is well-settled that the ALJ's duty to fully and fairly develop the record includes the responsibility of ensuring that the record

---

[6] Plaintiff did not fracture her left humerus until 2005. Accordingly, this condition could not have been a severe impairment between Plaintiff's alleged onset date, April 1, 1996, and her date last insured, March 31, 1999.

includes evidence addressing the alleged impairments at issue from either a treating or examining physician. *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir.2000) (holding that it was improper for an ALJ to rely on the opinions of reviewing physicians alone). While the Secretary is under no duty to go to inordinate lengths to develop a claimant's case, he must "make an investigation that is not wholly inadequate under the circumstances." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) (quoting *Miranda v. Secretary of Health, Educ. & Welfare*, 514 F.2d 996, 998 (1st Cir. 1975)). There is no bright-line test for determining when the Secretary has failed to adequately develop the record; the determination must be made on a case by case basis. *Battles*, 36 F.3d at 45 (quoting *Lashley v. Secretary of Health & Human Serv.,* 708 F.2d 1048, 1052 (6th Cir.1983)).

Here, in finding that Plaintiff had the RFC to perform a full range of medium work[7], the ALJ relied heavily on the opinion of Dr. Crow, stating his reasons as follows:

> The state medical examiner has reviewed medical records relating to the time period of April 1, 1996 to March 31, 1999, and determined that the claimant was able to perform work in accordance with the aforementioned residual functional capacity . . . . It is not possible to obtain a retroactive consultative examination to obtain more evidence. The fact that the claimant waited until 2005 to file suggests that her condition was not as bad during the remote period as she now alleges. Moreover, available evidence hints at remote drug and alcohol abuse until June 22, 2005, which could have been material to her now-alleged mental impairments. All of that potential evidence is unavailable for present adjudication, and the claimant is in pay status on her current SSI claim. Despite being granted ample opportunity to obtain additional records material to the insured period being adjudicated, no evidence has been provided which undermines the reliability of Dr. Crow's opinion and, accordingly, I give great weight to the opinion of the medical consultant.

(Tr. 16). Although the court acknowledges the unique difficulties due to the time lapse in this case,

---

[7] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c).

we find that the ALJ was under a duty to more thoroughly investigate Plaintiff's medical history. At the hearing, the ALJ and counsel for Plaintiff discussed several outstanding medical records, including those from Dr. Boseker and a Dr. Robinson, two of Plaintiff's treating physicians during the relevant time period.[8] (Tr. 449-55, 468). It is unclear as to whether these records are obtainable, but they were not furnished as part of the record nor did the ALJ make an independent attempt to procure them. In fact, the ALJ stated at the hearing, "I don't think I'm obliged to conduct an investigation to try to find these records." (Tr. 454). To the contrary, when the medical evidence in a case is insufficient to make a disability determination, the ALJ is required to do just that. *See Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

Instead of conducting an independent inquiry, the ALJ simply chose to rely upon the findings of a non-examining, non-treating physician. *See Dixon v. Barnhart*, 324 F.3d 997, 1002 (8th Cir. 2003) (relying upon non-examining, non-treating physicians to form an opinion on a claimant's RFC does not satisfy the ALJ's duty to fully and fairly develop the record). Furthermore, it appears that Dr. Crow's assessment, which the ALJ relied so heavily upon, was made without any medical evidence pertinent to Plaintiff's neck and back pain, including the 1994 MRI and the subsequent letter from Tim Franks. (Tr. 192). Since Dr. Crow's opinion was obtained without relevant medical history, his conclusions as to Plaintiff's RFC are of limited significance. For these reasons, the case should be remanded to the ALJ so he may further develop the record regarding Plaintiff's impairments through the date last insured.

B. <u>Plaintiff's Severe Impairments</u>

A severe impairment is one which significantly limits a claimant's physical or mental ability

---

[8] Plaintiff's counsel states that he made a good faith effort to obtain the pertinent medical records. *See* Pl.'s Br. at 10.

to perform basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is considered severe if the impairment(s) has more than a minimal effect on the claimant's ability to work. *Nguyen v. Chater*, 75 F.3d 429, 431 (8th Cir. 1996). Although the Plaintiff has the burden of establishing a severe impairment or impairments, the burden at this stage is not great. *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

The ALJ found that Plaintiff suffered from a spiral fracture of the left humerus with delayed union, which he found to be a severe impairment under the Act. (Tr. 14). This impairment is not relevant, however, as it occurred six years after Plaintiff's date last insured. In making his severity finding, the ALJ necessarily concluded that Plaintiff's other impairments, including her chronic back and neck pain, were non-severe.[9] Of Plaintiff's chronic back pain, the ALJ stated, "The available medical evidence does not establish that the claimant's degenerative disc disease persisted for over a year, and it does not indicate that the claimant experienced neurological deficits resulting therefrom." (Tr. 15).

To the contrary, the record is replete with evidence that Plaintiff's shoulder and back pain is a persistent and chronic condition. (Tr. 93, 181, 284, 299, 303-04, 445). Based on what medical evidence was provided, we know that Dr. Boseker sent Plaintiff for an MRI of her lumbar spine. (Tr. 181). The results indicated degenerative disc disease at L1-2, with disc space narrowing plus posterior bulge of the disc (3mm), degenerative disc disease at L4-5, plus localized herniation of the disc posterolaterally to the left (5-6 mm), resulting in encroachment upon the mouth of the left neuroforamen as well as the contiguous epidural fat planes along the left anterolateral aspect of the

---

[9] The court agrees with the ALJ as to the remainder of Plaintiff's alleged impairments. Specifically, Plaintiff failed to show that her depression was severe prior to the date last insured. The record shows that although Plaintiff took Prozac in 1997, she otherwise did not seek mental health treatment until 2006, which is inconsistent with her allegations of severe depression during the relevant time period. (Tr. 14).

thecal sac with apparent encroachment upon the left L5 nerve root, and degenerative disc disease at L5-S1, with disc space narrowing plus posterior bulge of the disc (1.5mm), resulting in encroachment. (Tr. 181-82). Additionally, a letter from Tim Franks indicates that he treated Plaintiff in physical therapy for post-surgical carpal tunnel syndrome, bilateral cubital tunnel syndrome, and cervical spine intervertebral disc syndrome at C5, C6, C7, and C8. He noted that although Plaintiff had "some improvement in physical therapy she still complained of constant dull ache, weakness and radiating pain from the cervical spine to both elbows and hands." (Tr. 445). Additionally, at the hearing, Plaintiff testified that her chronic neck and back pain kept her from returning to work as a carton folding machine operator. (Tr. 457).

Furthermore, in April 2007, following Plaintiff's date last insured, images taken of Plaintiff's cervical spine revealed marked degenerative changes at C4-C5, C5-C6, and C6-C7 with disc space narrowing and bony spurring. (Tr. 303). *See Fowler v. Bowen,* 866 F.2d 249, 252 (8th Cir.1989) (Evidence of a disability subsequent to the expiration of a claimant's insured status can be relevant in helping to elucidate a medical condition during the time for which benefits might be rewarded)). The frequency and consistency of Plaintiff's complaints as well as the medical evidence of record suggest that Plaintiff's chronic back and shoulder pain had more than a minimal effect on her ability to work. For these reasons, the court finds that the ALJ erred at step two of the sequential evaluation.

Because the court finds remand necessary to more fully develop the record, we will not address the remainder of Plaintiff's arguments.

## V. Conclusion

Accordingly, the ALJ's decision denying benefits to Plaintiff is not supported by substantial evidence and should be reversed. This matter should be remanded to the Commissioner for further development of the record. On remand, the ALJ should direct interrogatories to Dr. Boseker and Dr. Robinson, asking them to review Plaintiff's medical records during the relevant time period, complete an RFC assessment regarding Plaintiff's capabilities during the time period in question, and give the objective basis for their opinion, so that an informed decision can be made regarding Plaintiff's ability to perform basic work activities on a sustained basis. *Dozier*, 754 F.2d at 276. Once a proper assessment is completed, the ALJ should also reconsider whether Plaintiff's RFC allowed her to engage in substantial gainful employment prior to the date last insured.

ENTERED this 28th day of January 2010.

*/s/ J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF U.S. MAGISTRATE JUDGE